MARY M. BUCK, JOHN A. BUCK, JR., AND WALTER E. BUCK, EXECUTORS, ESTATE OF JOHN A. BUCK, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32584, 44153, 44684. Promulgated March 4, 1932.

*Norman A. Eisner, Esq.*, and *Walter J. Hollings, C. P. A.*, for the petitioners.

*H. A. Cox, Esq.*, for the respondent.

OPINION.

SMITH: These are proceedings for the redetermination of deficiencies as follows:

| Docket No. | Tax | Year | Deficiency |
|---|---|---|---|
| 32584 | Estate | | $46,784.06 |
| 44153 | Income | 1924 | 11,907.39 |
| 44684 | do | 1925 | 1,045.95 |

The allegations of error stated in the petition in Docket No. 32584 are as follows:

1. The inclusion in the gross estate of John A. Buck of the community interest of his wife, Mary M. Buck.

2. The inclusion in the gross estate, at face value, of a worthless note receivable of Ronald C. Kennedy in the principal amount of $1,000, plus accrued interest to date of death of $528.89, a total of $1,528.89.

3. The inclusion in the gross estate, at face value, of a promissory note of J. C. Freese in the principal amount of $2,000, the collection of which was barred by the statute of limitations.

4. The increase made in error by the respondent in the value of the following parcels of real estate for Federal estate-tax purposes:

Parcel No. 3—Market & Taylor St. Property
Parcel No. 4—Delger Bldg. 6th & Market Sts.
Parcel No. 9—Golden Gate & Larkin Property   (all in San Francisco)

5. The increase made in error by the respondent in the value of 269 shares of stock of the Langendorf Baking Company for Federal estate-tax purposes.

6. The failure to include among the liabilities of the estate the decedent's proportionate stockholder's liability in the amount of $8,105.14 arising from endorsement of acceptance of the Koster Company by officials of the California Barrel Company, of which the decedent was a stockholder.

7. The failure to include among the liabilities of the estate the claim of the Matson Navigation Company against the estate in the amount of $13,684.93.

8. The failure to include among the liabilities of the estate the amount of $95,000 loaned to decedent by his wife (Mary M. Buck), from her separate property, on April 1, 1922, and not repaid to her prior to his death on April 6, 1923.

9. The failure to include among the deductions allowed the estate a reasonable allowance for support of dependents actually paid pursuant to an order of the Superior Court for the City and County of San Francisco.

The above assignments of error are exclusive of certain assignments of error settled by stipulation of the parties at the hearing of these proceedings.

10. The allegation of error stated in Docket No. 44153 is, "The addition to petitioner's taxable income for the year 1924 of $60,-000.00 alleged to be deducted in error as income paid to Mary M. Buck, a beneficiary," and that in Docket No. 44684 is, "The addition to petitioner's taxable income for the year 1925 of $7,500.00 alleged to be deducted in error as income paid to Mary M. Buck, a beneficiary."

These proceedings were heard together, at which time the respondent moved to increase the deficiency in income tax determined against the estate for 1925 in Docket No. 44684 by the amount of tax payable upon the profit realized by the estate upon the sale in that year of shares of stock of the Langendorf Baking Company, provided the Board should find that the value of that stock at the date of the death of the decedent was less than the amount for which such stock was sold in 1925.

The petitioners are the executors of the estate of John A. Buck, who died testate a resident of San Francisco, California, on April 6, 1923. For convenience of treatment, the facts and conclusion of the Board pertaining to each allegation of error will be considered in order.

1. The first allegation of error is that the respondent has erroneously included in the gross estate of the decedent the value of the community interest of Mary M. Buck, the widow of the decedent. In the estate-tax return filed, such value was included in the gross estate. The will of the decedent executed November 22, 1922, states in part as follows:

I estimate that, at the time of my marriage to my wife, Mary M. Buck, my fortune was of the value of approximately Three Hundred Thousand Dollars; and that all of the rest of my property is the community property of myself and my said wife. I hereby recognize her right to one-half of the community property, and I give her, in addition thereto, one-half of my separate property, so that she shall receive altogether, on the distribution of my estate, one-half of all my property, whether separate or community. * * *

This point is decided in favor of the respondent. *United States v. Robbins*, 269 U. S. 315; *United States v. Talcott*, 29 Fed. (2d) 897; *United States v. Henshaw*, 31 Fed. (2d) 946; *Lula Vance Baumgartner*, 21 B. T. A. 623.

2. On September 16, 1915, decedent received an unsecured note from Ronald C. Kennedy in the principal sum of $1,000, due one year after date with interest at the rate of seven per cent per annum. At the date of the death of John A. Buck (April 6, 1923) nothing had been paid on account of the principal of the note and there was accrued interest in the amount of $528.89. The note was returned in the estate-tax return at a value of $500. The respondent valued it at $1,528.89, which included the entire principal and interest to April 6, 1923. The full amount of the note with interest was paid in 1928, there having been some prior payments of interest.

The petitioners contend that the note was outlawed at the date of the death of the decedent and had no value. There is no proof, however, that the note had no value at the date of death of the decedent, and, even if outlawed at that date, there is no evidence that the maker of the note would have pleaded the statute of limitations as a bar if a suit had been brought against him for the collection thereof. The action of the respondent in including the note in the gross estate at a value of $1,528.89 is sustained.

3. The estate-tax return filed by the petitioners contained the following item: " Note, J. C. Freese, dated November 5, 1915, in the principal sum of $2,000, with interest at 6%, due six months from date. Interest paid to April 1, 1923. Barred by Statute." The value was given as " Nil." This note was included in the gross estate at face value by the respondent in the determination of the deficiency. On November 6, 1923, an interest payment was made of all accrued interest to that date and, on November 4, 1925, an interest payment of $240 was made. The principal of the note has never been collected.

The petitioners contend that this note was outlawed at the date of the death of the decedent and was worthless on that date. There is no proof, however, that the note was worthless. The estate-tax return shows that interest was paid to April 1, 1923, and that three years' interest was subsequently paid upon the note. The petitioners

contend that the payment of interest on the note did not prevent the running of the bar of the statute of limitations, which is four years from the due date of the note. (Section 337 of the Code of Civil Procedure of the State of California.) In their brief, the petitioners claim that under the laws of the State of California " partial payments do not toll the statute of limitation." In support of this proposition, section 360 of the Code of Civil Procedure is relied upon, which provides:

No acknowledgement or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby.

In *Minifie* v. *Rowley*, 202 Pac. 673, it was stated:

The effect of this provision is not to require that the new or continuing contract must consist of a written acknowledgment or promise. There may be an acknowledgment by conduct, as well as by words. In the case of a part payment, for instance, of either principal or interest the conduct itself has always been deemed, unless accompanied by qualifications, an unequivocal acknowledgment of a subsisting contract or liability from which a new contract to pay the debt must be inferred. *Barron* v. *Kennedy*, 17 Cal. 574, 577. Section 360 of the Code of Civil Procedure makes no attempt to regulate the character of the acknowledgment itself; its sole purpose is to alter the form of the evidence by preventing parol proof of the acknowledgment or promise whether the latter be in the form of words or acts. * * *

The decision in *Altube* v. *Aguirre*, 212 Pac. 217, is to the same effect. The law in California as established by these decisions and others cited therein is that the payment of interest on promissory notes is such an act or promise as will extend the statute of limitations, but that where such payment is disputed, parol evidence as to such payment will not be received, but only a written acknowledgment. In these proceedings the petitioners admit that payments of interest were received. Because of the failure on the part of petitioners to prove that the note was worth less than $2,000 at the date of the death of the decedent, the respondent's action in including the note in the gross estate at a value of $2,000 is sustained.

4. In the estate-tax return the following three real estate properties in San Francisco were listed among the assets of the estate. The Commissioner determined a value for them higher than that shown in the return.

| Item | Description | Value returned | Value determined by Commissioner |
|---|---|---|---|
| 3 | Undivided one-half interest Market & Taylor Sts. property | $145,000 | $167,500 |
| 4 | Undivided one-half interest Delger Bldg. Sixth & Market | 250,000 | 275,000 |
| 9 | Undivided one-third interest Golden Gate & Larkin | 80,000 | 100,000 |

The net rentals received on these properties for 1922 were $22,077.57, $24,157.94, and $18,042.57, respectively. The values shown in the estate-tax return were those determined by three appraisers for the estate—Dennis M. Coghlan, R. F. Mogan, and W. D. Sheldon, and are the values upon which the State inheritance tax was paid. Coghlan is a well qualified expert on real estate values in San Francisco and has been appointed by the court in hundreds of cases for the purpose of determining values. Mogan occupied the position of inheritance-tax appraiser for the State of California. Sheldon was deceased at the time of hearing. In the determination of the net rentals no amount was allowed for depreciation of physical properties. The value for the Market and Taylor Streets property was based upon a capitalization of the net rentals at approximately 7.51 per cent; that of the Delger Building at Sixth and Market Streets upon a capitalization of net rentals, plus an estimated amount for vacancies of approximately 7 per cent (the net rentals of the Delger Building show a yield of 4.84 per cent on a value of $500,000 for the entire property). The value of the Golden Gate and Larkin Streets property was found by capitalizing the net rentals for 1922 at approximately 7.5 per cent. The properties at Market and Taylor Streets, and at Sixth and Market Streets (Delger Building) were in the heart of the business section and were valuable properties. The buildings upon them were inadequate. There were no sales of comparable properties at or near the basic date with which we are concerned.

At the hearing of these proceedings the respondent adduced no testimony in support of the values determined by him. He sought, however, to disprove the determinations of Coghlan upon the basis that the net rentals for 1922 should be capitalized upon a basis of 5½ or 6 per cent. Coghlan, although admitting that the first two parcels of property named were valuable pieces of property, was of the opinion that his bases of valuation were correct and that the fair market values of the interests of the estate in those properties were not in excess of the amounts fixed by the appraisers.

We are of the opinion that the evidence of record establishes the correctness of the determinations of value made by the appraisers for State tax purposes, which are the same amounts as reported in the estate-tax return. Our predicate for this conclusion is in part that in the determination of the net rentals no depreciation upon the buildings on the properties is provided for. It is furthermore to be noted that in the valuation of the " Delger Building " property, $10,000 was added to the actual rentals for the purpose of arriving at a fair rental. The rentals actually received were only 4.84 per cent upon the valuation for property shown in the estate-tax return. The determination of the respondent upon this point is reversed.

5. The decedent was the owner at the date of death of 269 shares of the capital stock of the Langendorf Baking Company. The value placed thereon by the petitioners in the estate-tax return was $80 per share, or $21,520 for the 269 shares as at April 6, 1923, the date of decedent's death. The respondent determined a value of $105 per share, or a total value of $28,245 for the 269 shares.

The Langendorf Baking Company had outstanding on March 31, 1923, 2,632 shares of stock of a par value of $100 per share. On that date it had an earned surplus of $42,926.32. The stock was closely held. There were but 15 or 16 stockholders. There had been no transactions in the stock at or near the date of death of the decedent. It was without an established market. Between February, 1919, and April, 1923, no dividends whatsoever were paid on the stock. In July, 1920, there had been an assessment upon the stock of $6 per share, and in May, 1921, an assessment of $10 per share. The book value of the stock as at March 31, 1923, was $139.70 per share, but in reaching such a book value there was included among the assets $75,000 for good will. In April, 1923, after an appraisal by the American Appraisal Company, the assets of the company were written up $97,000, representing the increased value of the physical properties in that amount. On May 15, 1923, one month and nine days after the decedent's death, a stock dividend of 20 per cent was declared, as a result of which the estate received 54 additional shares of stock. The earnings for 1922 were good and for 1923 were approximately $160,000. Cash dividends per share were paid as follows:

| | | | |
|---|---|---|---|
| July 14, 1923 | $3 | Apr. 2, 1924 | $2 |
| Nov. 2, 1923 | 2 | July 2, 1924 | 2 |
| Dec. 26, 1923 | 2 | Oct. 2, 1924 | 2 |

Upon a careful consideration of all of the evidence, the fair value of the stock on April 6, 1923, is determined to be $80 per share, the amount shown in the estate-tax return.

At the hearing in these proceedings, counsel for the respondent moved to increase the deficiency in the income tax of the estate for 1925 by the difference between $21,520, the value of the shares at the date of the death of the decedent (if that value should be sustained by the Board) and the price at which sold by the estate in 1925, namely, $33,915, or $12,395. This contention is considered below.

6. The estate-tax return filed by the petitioners listed in schedule " B "—" Stocks and Bonds," 95 shares of the capital stock of the California Barrel Company—value on date of death " Nil." In schedule " I "—" Debts of Decedent "—the following item was listed as a liability: " Wells Fargo Bank and Union Trust Company—

Acceptances for California Barrel Co. $8,105.14." The Wells Fargo Bank and Union Trust Company filed a claim against the estate in the amount of $8,105.14, based upon the alleged liability of the estate as a stockholder in the California Barrel Company, which in turn was liable as a stockholder of the Koster Company, which was alleged to be indebted to the Wells Fargo Bank and Union Trust Company.

This claim was not allowed by the probate court; and suit was commenced against the estate by the bank in March, 1927. In 1928, while this suit was still pending, Frederick J. Koster (who owned 874 shares and whose family owned more than 4,000 shares of the California Barrel Company stock) agreed to assume the liability of the estate as a stockholder in that company in exchange for the 95 shares of stock held by the estate, which were returned in the estate-tax return as having no value. This transfer was approved by the probate court.

The petitioners contend that the estate, on April 6, 1923, had a liability to the Wells Fargo Bank and Union Trust Company of the $8,105.14 and that the mere fact that in subsequent years this claim was liquidated by the petitioners turning over to one Koster shares of stock which had been returned in the estate-tax return as having no value does not prevent the estate from deducting from the gross estate the claim in question.

Article 39 of Regulations 63 (1922 Edition) provides as follows:

*Claims against the estate.*—The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether then matured or not. Only such claims as are enforceable against the estate may be deducted.

The evidence in this case does not show that the bank had an enforceable claim against the estate. At any rate it was never enforced. If it had been the estate would have been subrogated to the rights of the California Barrel Company in respect of the payment made, which right might have been equal to the amount of the claim. The action of the Commissioner in disallowing the deduction of the claim is sustained.

7. By an amendment to the petition, the petitioners claim the right to deduct from the gross estate $13,684.83, the amount of a claim filed against the estate by the Matson Navigation Company, which was allowed by the probate court but which had not been paid at the time of the hearing in these proceedings.

Section 1497 of the Code of Civil Procedure of California provides:

Every claim allowed by the executor or administrator, and approved by a judge of the Superior Court, or a copy thereof, as hereinafter provided, must,

within thirty days thereafter, be filed in the court, and be ranked among the acknowledged debts of the estate, to be paid in due course of administration

The claim of the Matson Navigation Company represents the decedent's liability as a stockholder of the Matson By-Products Company for his proportionate part of an indebtedness of that company to the Matson Navigation Company. Under section 3 of article 12 of the California constitution " each stockholder of a corporation * * * shall be individually and personally liable for such proportion of all its debt and liabilities contracted or incurred, during the time he was a stockholder." The debt giving rise to the claim in question was incurred during the time the decedent held stock in the debtor corporation, and within three years of the time the Matson Navigation Company's claim was allowed by the probate court. The claim was not barred by the three-year statute of limitations (section 359 of the California Code of Civil Procedure) and is a subsisting claim against the estate. See *Gardiner* v. *Royer* (Cal.), 139 Pac. 75; *McCann Co.* v. *Denny* (Cal.), 270 Pac. 190; *Wass* v. *Keene* (Cal.), 286 Pac. 1041. Subsequent agreements between the debtor and creditor corporations did not affect the decedent's and/or his estate's liability, nor stay the running of the statute of limitations. Cf. *Bank of San Luis Obispo* v. *Pacific Coast Steamship Co.*, 103 Cal. 594; 37 Pac. 499. The petitioners' contention that the amount of this claim should be allowed as a deduction from the gross estate is sustained.

8. In the spring of 1922, the decedent had a bill to pay in the amount of $325,000. The decedent not having the full amount of cash with which to pay the debt, contemplated the selling of certain securities to raise the cash. Mary M. Buck, the decedent's widow, remonstrated against the sale of the securities, since she had funds in the bank for the payment of a part of the debt. She turned over to her husband $95,000 to enable him to make the payment. This amount was never repaid to her. She presented no claim against the estate for the $95,000 in question and the probate proceedings were completed without reference to any such claim.

The circumstances under which the payment was made by Mary M. Buck were stated by her to have been as follows:

Mr. Buck had a large amount to pay, a large bill to pay and he was short of money, and I had this money in the bank and said to him, why, why not take this money, I will lend it to you. He hesitated, he thought he could sell some securities, but he said, "All right, I will take that money," and that is how it came that I loaned him the money.

Upon cross-examination she stated that the bill was in the amount of $325,000 and that:

* * * He was lacking that amount of money, and I said I would give it to him. He would not hear of it at first, but I said, " Oh, yes, do not sell any of the securities. It is there, you can have it."

Although from the record it is evident that Mary M. Buck turned over from her separate estate $95,000 to her husband on April 1, 1922, the evidence does not warrant the conclusion that the money was loaned to the decedent. His will executed on November 22, 1922, states that all of his property, with the exception of $300,000 which constituted his fortune at the date of marriage, constituted community property.

A somewhat similar situation was involved in *Blair* v. *Stewart*, 49 Fed. (2d) 257. In that case the court stated if there was any agreement which would serve to bind the decedent's separate estate the fact—

* * * ought to be proved by clear and convincing evidence where as here the proof of it depends, not upon the interpretation of a written instrument, but upon the oral testimony of the grantee, as to what was agreed to by the grantor whose lips have been sealed by death.

Mary M. Buck testified that her separate estate consisted of gifts of property to her from her husband and income therefrom. Whether the payment of the $95,000 to her husband represented a gift or a loan to him is uncertain. In any event it is to be noted that the widow took under the will and not under the statute. It is possible that the provision which the decedent made for Mary M. Buck in his will was intended to and did compensate her for the $95,000 in question.

The taxing statute permits the deduction from the gross estate of " claims against the estate  * * *  as are allowed by the laws of the jurisdiction  * * *  under which the estate is being administered." (Section 403 (a) (1) of the Revenue Act of 1921.) The evidence does not show that the widow had an enforceable claim against the estate for the $95,000 in question. The action of the respondent in disallowing the deduction is sustained.

9. Under date of April 26, 1923, Mary M. Buck filed a petition in the Superior Court of the State of California, in and for the City and County of San Francisco, for an order granting family allowance. In such petition she alleged that John A. Buck died testate on the sixth day of April, 1923, and that he left an estate " which is far in excess of " $10,000. She further alleged:

That the sum of seventy-five hundred dollars ($7,500) per month is a reasonable and necessary allowance for the maintenance and support of your petitioner, and your petitioner therefore desires to have this court make an allowance to her of the sum of seventy-five hundred dollars ($7,500) per month, as and for her use, maintenance and support, the same to take effect from the date of the death of said John A. Buck, deceased, and to continue until the return to this court of the inventory and appraisement in the estate of said deceased.

On April 26, 1923, the court issued an order to the effect that $7,500 per month—

\* \* \* is a reasonable and necessary sum for the use, maintenance and support of said Mary M. Buck, the widow of said John A. Buck, deceased, and that she be and she is hereby allowed out of the estate of said deceased as and for her use, maintenance and support, the sum of Seven Thousand Five Hundred Dollars ($7,500) per month; \* \* \*

Pursuant to the above entitled order, twelve monthly payments of $7,500 were made to the widow.

On July 11, 1924, the inventory of the estate having then been filed, Mary M. Buck filed with the above-mentioned court a petition for family allowance in the amount of $3,750 per month for her maintenance and support, alleging that such amount was a reasonable allowance for such purposes. On July 23, 1924, the court issued an order pursuant to which there was paid to her for a period of 10 months the amount of $3,750 per month. The total amount paid by the estate for family allowance pursuant to court orders, during the period of administration (22 months), and claimed as a deduction from the gross estate, was $127,500. The respondent has allowed a deduction for family allowance at the rate of $2,500 per month for a period of 21 months—total $52,500.

The statute permits the deduction from the gross estate of " such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction " (section 403 (a) (1), Revenue Act of 1921). The Commissioner's regulations provide, with reference to this item, as follows:

ART. 43. *Support of dependents.*—The support during the settlement of the estate of dependents of the decedent should be deducted, but pursuant to the following rules:

(1) In order to be deductible, the allowance must be authorized by the laws of the jurisdiction in which the estate is being administered, and not in excess of what is reasonably required.

(2) The allowance for which deduction may be made is limited to support during the settlement of the estate. Any allowance for a more extended period is not deductible.

(3) There must be an actual disbursement from the estate to the dependents, but after payment has been made the right of deduction is not affected by the fact that the dependents do not expend the entire amount for their support during the settlement of the estate.

There is no dispute as to the payment by the estate of the amount claimed as a deduction for the support of dependents, such amount having been authorized by proper court orders. The respondent has determined that $2,500 per month is a reasonable allowance for the support of the decedent's widow.

The decedent's gross estate was in excess of $2,000,000. During the period of administration the widow occupied the summer and winter homes that she and decedent had lived in prior to his death. The winter home was a 12-room house on Gough Street, in San Francisco. The summer home was on a 9-acre estate at San Rafael, in Marin County; the house there had 15 rooms. Throughout the year three gardeners and a coachman were employed at the summer home. The widow regularly employed two or three house servants and a chauffeur, who were with her at either home. The monthly pay roll for such services was approximately $900. On account of illness following decedent's death, the widow had extra expenses. She testified that she had not spent the full amount of the monthly allowance of $7,500 per month for her support and, although $7,500 was reasonably required for her support in the standard of living to which she had been accustomed during the first 12 months following her husband's death, $3,750 per month was sufficient for that purpose thereafter, and in 1924 the court reduced the allowance to that amount. The widow kept no books of account showing the actual cost of her support. From the record we can not determine that $7,500 per month was reasonably required for the widow's support during the 12 months immediately following the decedent's death; neither do we think the respondent's allowance of $2,500 per month is sufficient, nor is it supported by the evidence. The fact that the widow requested a reduction of the allowance for her support, and the approval of such reduced allowance by the court, is some indication that $3,750 per month was the amount reasonably required for her support. In the circumstances, we hold that the deduction for support of dependents during the period of administration should be based upon a monthly allowance of $3,750. The allowance having been made for a period of 22 months, and not 21 months as respondent has erroneously determined, the amount deductible from the gross estate is $82,500. Cf. *Estate of W. A. Blair*, 4 B. T. A. 959; *Mary A. Powers, Executrix*, 6 B. T. A. 633; *Fred Wolferman, Executor*, 10 B. T. A. 285; *Allie E. Nicholson, Executrix*, 21 B. T. A. 795.

10. The only question raised by the petitions filed in Docket Nos. 44153 and 44684 is the right of the petitioners to deduct from the gross income of the estate amounts paid to the widow for her maintenance and support during the period of administration. Pursuant to the orders of the Superior Court of the State of California, in and for the City and County of San Francisco, the executors paid " out of the estate " certain amounts for the support of the decedent's widow in the calendar years 1924 and 1925. In the income-tax returns filed for the estate for those years there were deducted from the gross incomes $60,000 and $7,500, respectively, representing the pay-

ments of the allowances. The respondent properly disallowed the deduction of these amounts. Section 403 (a) (1) of the Revenue Act of 1921 provides for such deductions from the gross estate, and having determined a reasonable allowance for the support of dependents during the period of administration, the total amount of which has been allowed as a deduction from the gross estate, the same allowances are not deductible from the gross income of the estate. See *Charles Lesley Ames, Executor,* 14 B. T. A. 1067; affd., 49 Fed. (2d) 853. See also *Buck* v. *McLaughlin,* 48 Fed. (2d) 135.

As indicated above, respondent at the hearing of these proceedings moved to increase the deficiency in Docket No. 44684 by the amount of the profit, namely, $12,395, realized by the estate in 1925 upon the sale of its holdings in the Langendorf Baking Company. The evidence shows that this stock was reported in the estate-tax return as having a value of $21,520 and that that stock, including certain shares received during the period of administration as a stock dividend, was sold by the estate in 1925 for $33,915. Clearly, the difference between these two amounts of $12,395 represents taxable income of the estate. The motion of the respondent to increase the deficiency for 1925 is allowed.

*Judgments will be entered under Rule 50.*